UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| LEE CHASE and JUAN YARBROUGH, individually and on behalf of all other persons similarly situated who were employed by MADICORP, and/or any other entities affiliated with or controlled by MADICORP, | |
| Plaintiffs, | 6:23-cv-00436 (AMN/TWD) |
| v. | |
| MADICORP, | |
| Defendant. | |

---

**APPEARANCES:**  **OF COUNSEL:**

**GATTUSO & CIOTOLI, PLLC**  **FRANK S. GATTUSO, ESQ.**
The White House
7030 E. Genesee Street
Fayetteville, New York 13066

**VIRGINIA & AMBINDER, LLP**  **JAMES E. MURPHY, ESQ.**
40 Broad St., 7th Floor  **MICHELE A. MORENO, ESQ.**
New York, NY 10004
*Attorneys for Plaintiffs Lee Chase, Juan Yarbrough, and the putative class and collective*

**BOUSQUET HOLSTEIN PLLC**  **LAWRENCE M. ORDWAY, JR., ESQ.**
One Lincoln Center  **RYAN S. SUSER, ESQ.**
110 W. Fayette St., Suite 1000
Syracuse, NY 13202

**DONNELLY, CONROY & GELHAAR, LLP**  **T. CHRISTOPHER DONNELLY, ESQ.**
260 Franklin Street, Suite 1600  **TIMOTHY H. MADDEN, ESQ.**
Boston, MA 02110
*Attorneys for Defendant MADICORP*

**Hon. Anne M. Nardacci, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

**I.      INTRODUCTION**

Presently before the Court is Defendant MADICORP's ("Defendant" or "Madicorp")

motion to dismiss Plaintiffs' Complaint alleging various violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA") and the New York Labor Law ("NYLL"), Dkt. No. 1 (the "Complaint"), pursuant to Rule 12 of the Federal Rules of Civil Procedure ("Rule 12").  Dkt. No. 6 (the "Motion").  Additionally, Plaintiffs have cross-moved to amend the Complaint and submitted a proposed Amended Complaint in support of that motion.  Dkt. No. 19; Dkt. No. 19-2 (the "Amended Complaint").

For the reasons set forth below, the Amended Complaint is accepted for the purposes of resolving the Motion, and Defendant's Motion is granted.

## II.   BACKGROUND

The following facts are drawn from the Amended Complaint unless otherwise noted, and are assumed to be true for purposes of ruling on the Motion.  *See Div. 1181 Amalg. Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (*per curiam*).

### A.   The Parties

Defendant Madicorp is a foreign limited liability corporation organized and existing under the laws of Massachusetts, with a principal place of business in Needham, Massachusetts.  Dkt. No. 19-2 at ¶ 19.[1]  Madicorp operates as an "industrial staffing agency" that provides "manufacturing and warehouse workforces across the United States" including in New York.  *Id*. at ¶¶ 20, 35.  Proposed defendant AAA Airporter Services, Inc. ("AAS") is similarly a Massachusetts entity that jointly operates Madicorp's business, including through their shared President, Treasurer, Secretary, Director, and registered agent.  *Id*. at ¶¶ 23, 25-27.  As part of this joint operation, Madicorp and AAS have "control, oversight, and direction over the

---

[1] Citations to docket entries utilize the pagination generated by CM/ECF docketing system and not the documents' internal pagination.

operations of the work performed by Plaintiffs, including payroll practices, and . . . the ability to hire and fire Plaintiffs." *Id*. at ¶ 29.  Specifically, "Madicorp interviews and hires Plaintiffs, and corresponds with Plaintiffs regarding job assignments and requirements, scheduling, lodging, and pay rates," and AAS "appears on Plaintiffs' paystubs." *Id*. at ¶ 31.

Plaintiff Lee Chase ("Chase") is a resident of Palmetto, Florida, who worked for Madicorp[2] from approximately February 2022 through September 2022 at worksites including in Sherrill, New York and Horicon, Wisconsin.  *Id*. at ¶¶ 15-16.  Plaintiff Juan Yarbrough ("Yarbrough," and collectively with Chase, "Named Plaintiffs") is a resident of Longview, Texas, who worked for Madicorp from approximately February 2022 through September 2022 at worksites including in Sherrill, New York; Champaign, Illinois; and Horicon, Wisconsin.  *Id*. at ¶¶ 17-18.  Additionally, Named Plaintiffs bring this suit on behalf of a putative collective consisting of "All individuals who worked for Defendants from April 7, 2020 through the date of trial, and elect to opt-in to this action pursuant to FLSA, 29 U.S.C. 216(b)." *Id*. at ¶ 50.  Finally, Named Plaintiffs bring this suit on behalf of a putative class consisting of "All individuals who worked for Defendants from April 7, 2017 through the date of trial." *Id*. at ¶ 51.[3]

**B. Plaintiffs' Allegations**

The Amended Complaint alleges that Plaintiffs "were deployed to various facilities . . . to perform all types of industrial labor" including, but not limited to working on assembly lines, operating fork lifts, press brakes, and laser presses, painting, welding, and "other kind[s] of industrial labor needed." Dkt. No. 19-2 at ¶ 58.  As part of their assigned work, Plaintiffs were expected to work, and were compensated for, 40 to 72 hours of work per week.  *Id*. at ¶ 61.

---

[2] In this Order, the Court refers to AAS collectively with Defendant Madicorp as "Madicorp."

[3] The Court refers to Named Plaintiffs together with the putative collective and class as "Plaintiffs."

Additionally, because Plaintiffs were generally staffed on projects away from their homes, Madicorp required Plaintiffs to stay at hotels which were generally located 30 to 45 minutes away from the worksites. *Id*. at ¶ 62. All Plaintiffs were required to take Madicorp vehicles between their hotels and worksites, and certain Plaintiffs, including Chase, were tasked with driving themselves and co-workers between their hotels and worksites. *Id*. at ¶¶ 63-66, 73-74. At times, Chase and certain other similarly situated employees also had to drive co-workers in Madicorp vehicles to and from a laundromat, for which time they did not receive compensation. *Id*. at ¶ 73. Further, Plaintiffs arrived at their worksites "approximately 30 minutes before their shift[s] began" each workday, but were not allowed to clock in (and thus receive compensation) until the shift start time at the top of the hour. *Id*. at ¶¶ 64, 66-70.

As a result of the conduct just described, Named Plaintiffs identify three theories of underpayment in violation of the FLSA and NYLL. First, Named Plaintiffs allege that "workers who were required to drive the work van and transport their co-workers to and from the jobsite after picking them up at different hotels[ ] should have been compensated for that time." Dkt. No. 19-4 at 17 (citing Dkt. No. 19-2 at ¶¶ 73-74, 108-09). Second, Named Plaintiffs allege that they were "engaged to wait" by Madicorp for the approximately 30 minutes between arriving at their worksite each day and when they were permitted to clock in. *See* Dkt. No. 19-4 at 16-17 (citing Dkt. No. 19-2 at ¶¶ 67-71). Finally, Named Plaintiffs allege that Chase and other Madicorp employees who drove a Madicorp vehicle to and from a laundromat did not receive compensation for that time but should have. Dkt. No. 19-4 at 9 (citing Dkt. No. 19-2 at ¶ 73). Based on these periods of allegedly compensable but uncompensated time, Plaintiffs allege that Madicorp has violated (a) the overtime provisions of the FLSA, *see* Dkt. No. 19-2 at ¶¶ 83-89, (b) the overtime provisions of the NYLL, *see id*. at ¶¶ 90-98, (c) the underpayment protection

4

provisions of the NYLL, *see id*. at ¶¶ 99-112, and (d) the pay statement and wage notice provisions of the NYLL, *see id*. at ¶¶ 113-22.

### C. The Instant Action and Motion

Named Plaintiffs began the instant action on April 7, 2023, by filing a collective action and class action complaint with jury demand. Dkt. No. 1. On May 8, 2023, Madicorp timely filed the Motion. Dkt. No. 6. On June 30, 2023, following a Court-approved extension, *see* Dkt. No. 16, Named Plaintiffs filed an opposition to the Motion and a cross motion seeking to amend the Complaint. Dkt. No. 19. Named Plaintiffs attached the proposed Amended Complaint to their cross motion. *See* Dkt. No. 19-2. On August 11, 2023, following a Court-approved extension, *see* Dkt. No. 21, Madicorp filed a response in opposition to the motion to amend and in further support of the Motion. Dkt. No. 22. The Motion is thus ripe for determination.

## III. STANDARD OF REVIEW

A motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) is properly granted "when the court lacks statutory or constitutional authority to adjudicate it." *Cayuga Indian Nation of New York v. Vill. of Union Springs*, 293 F. Supp. 2d 183, 187 (N.D.N.Y. 2003) (citing *Luckett v. Bure*, 290 F.3d 493, 496 (2d Cir. 2002)). To resolve such a motion, the court "accepts as true all the factual allegations in the complaint and must draw all reasonable inferences in favor of the plaintiff." *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003) (citing *Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll.*, 128 F.3d 59, 63 (2d Cir. 1997)). As relevant here, "federal question jurisdiction exists where 'a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Union Springs*, 293 F. Supp. 2d at 188 (quoting *Perpetual Sec. v. Tang*, 290 F.3d 132, 137 (2d Cir.

2002)).

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of a party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007). In considering legal sufficiency, a court must accept as true all well-pled facts in the complaint and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleadings, the court may consider documents that are "integral" to the pleadings even if they are neither physically attached to, nor incorporated by reference into, the pleadings. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," FED. R. CIV. P. 8(a)(2), with sufficient factual "heft to show that the pleader is entitled to relief," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, a pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at

6

558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the . . . complaint must be dismissed." *Id.* at 570.

IV.     DISCUSSION

As requested by Named Plaintiffs, "the Court [will] analyze the facts set forth in Plaintiffs' proposed [Amended Complaint] in determining whether to grant [the M]otion." Dkt. No. 19-4 at 18 (citing *Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299 (2d Cir. 2020)).

"For claims alleging overtime violations under FLSA and NYLL, to survive a motion to dismiss, 'a plaintiff must sufficiently allege [forty] hours of work in a given work week as well as some uncompensated time in excess of the [forty] hours.'" *Hudson v. St. Joseph's Hospital Health Ctr.*, No. 5:21-cv-935 (GLS/TWD), 2023 WL 356165, at *3 (N.D.N.Y. Jan. 23, 2023) (quoting *Lundy v. Catholic Health System of Long Island, Inc.*, 711 F.3d 106, 114 (2d Cir. 2013)). Furthermore, "'plaintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week.'" *Id.* (quoting *Nakahata v. New York-Presbyterian Healthcare System, Inc.*, 723 F.3d 192, 201 (2d Cir. 2013)). On the other hand, "'[a]llegations that the plaintiff 'typically,' 'occasionally,' or 'often' worked certain shifts' are not sufficient to state a plausible claim because such allegations 'invite[ ] speculation.'" *Id.* (quoting *Watkins v. First Student, Inc.*, No. 17-CV-1519 (CS), 2018 WL 1135480, at *8 (S.D.N.Y. Feb. 28, 2018)).

A.     The FLSA Claim

"Generally, to establish liability under the FLSA 'a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work.'" *Zhang v. Ichiban Group*, LLC, No. 1:17-CV-148 (MAD/TWD), 2023 WL 6122847, at *4 (N.D.N.Y. Sept. 19, 2023) (quoting *Kuebel v. Black &*

7

*Decker*, 643 F.3d 352, 363 (2d Cir. 2011)).  Additionally, "'a plaintiff must show that he or she is an employee of the defendant within the meaning of the FLSA' and that the defendant is an employer subject to the FLSA."  *Yanchaliquin v. Chuqui Builders Corp.*, No. 1:23-cv-504 (BKS/CFH), 2023 WL 7299810, at *3 (N.D.N.Y. Nov. 6, 2023) (quoting *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 31-32 (E.D.N.Y. 2015)).  Further, as relevant here, Congress amended the FLSA by passing the Portal-to-Portal Act, which exempts employers from FLSA liability for (1) time spent "walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and (2) activities which are preliminary to or postliminary to said principal activity or activities, . . . either prior to the time on a particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities."  *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 32 (2014) (quoting 29 U.S.C. § 254(a)).  "[T]he term 'principal activity or activities' embrac[es] all activities which are an 'integral and indispensable part of the principal activities.'"  *IBP, Inc. v. Alvarez,* 546 U.S. 21, 29-30 (2005) (quoting *Steiner v. Mitchell,* 350 U.S. 247, 252-53 (1956)).  "An activity is [ ] integral and indispensable to the principal activities that an employee is employed to perform if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities."  *Busk*, 574 U.S. at 33.

  Here, Named Plaintiffs allege that (a) their pre-shift waiting time, and (b) their driving time should have been compensated, including at an overtime rate.  *See* Dkt. No. 19-4 at 15 ("the crux of Plaintiffs' complaint is compensable waiting and drive time - that Defendant maintained a policy and practice of requiring its workers to travel together to their worksites in company vans, arrive at the worksites thirty minutes early, and to wait on the worksite premises until it

8

was time to 'clock-in.'").[4]  Named Plaintiffs do not allege underpayment based on any other hours or activities.  *See id*. at 21 ("Plaintiffs have clarified that they are not claiming wages for time spent commuting, changing their clothes, or walking to their worksites.").  Madicorp seeks to dismiss this claim in its entirety on the basis that each period of time alleged represents quintessential preliminary or postliminary activities, which are not compensable under the FLSA (or NYLL) because they are done outside the period of time when Plaintiffs performed their principal activities for Madicorp, namely the industrial labor they were hired to do.  *See* Dkt. No. 22 at 3-4.  It is undisputed that Plaintiffs' principal job activities were "industrial labor" at "manufacturing facilities or warehouses."  Dkt. No. 19-2 at ¶ 58; *accord* Dkt. No. 19-4 at 7 (Madicorp workers "provide whatever industrial labor is needed at the facility to which they are deployed, such as working the assembly lines and operating the relevant machinery and tools.").

First, as to the time Madicorp required Plaintiffs to spend waiting at the worksite before being permitted to clock in, the Court agrees with Madicorp that the FLSA does not require that this time be compensated.  Plaintiffs argue that they were "engaged to wait" by Madicorp because they were "not permitted to travel independently to the worksite and [we]re required to wait on the worksite premises during those 30-minute periods."  Dkt. No. 19-4 at 8.  However, at least since the Portal-to-Portal Act, employees are not "engaged to wait" if they are required to wait on the worksite prior to beginning the principal activities for which the employees were hired.  *See Haight v. The Wackenhut Corp.*, 692 F. Supp. 2d 339, 346 (S.D.N.Y. 2010) ("waiting time before any principal activity has taken place to effectively start the workday is not compensable under the FLSA"); *see also Busk*, 574 U.S. at 36 ("If the test could be satisfied merely by the fact that an employer required an activity, it would sweep into 'principal activities'

---

[4] The parties did not address the laundry drives alleged in the Amended Complaint in depth and thus the Court focuses on Plaintiffs' other claims, *see infra* Sec. IV.C n.7.

9

the very activities that the Portal-to-Portal Act was designed to address."). Indeed, although it is undisputed that Madicorp required the pre-shift waiting time, Plaintiffs make no effort to connect this period of waiting—before any principal industrial or manufacturing work had commenced—to the successful execution of those principal activities other than the general proposition that an employee cannot do an in-person job unless they are physically present. *See Gorman v. Consol. Edison Corp.*, 488 F.3d 586, 593 (2d Cir. 2007) (preliminary worksite activities may be "necessary in the sense that they are required and serve essential purposes . . . but they are not integral to principal work activities"); *see, e.g.*, *IBP, Inc. v. Alvarez*, 564 U.S. 21, 41-42 (2005) (time spent by employees waiting to put on protective clothing was not "integral and indispensable" to their "principal activit[ies,]" and therefore not compensable) (*citing* 29 C.F.R. § 790.7(g)); *Campbell v. Empire Merchs.*, No. 16-CV-5643 (ENV) (SMG), 2018 WL 5456666, at *6 (E.D.N.Y. Aug. 27, 2018), *report and recommendation adopted*, 2019 WL 2206065 (E.D.N.Y. May 22, 2019) (that "plaintiff was required to be present in a particular place at a particular time to receive a work assignment is insufficient to qualify the time he spent there as integral and indispensable to his principal work activities").[5] Because the pre-shift waiting time alleged is preliminary to the Plaintiffs' principal activities, the FLSA does not require that such time be compensated.

---

[5] The cases Plaintiffs cite in support of their argument are unavailing. *See* Dkt. No. 19-4 at 15-16. For example, in *Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 255-56 (S.D.N.Y. 2008), and *Rui Xiang Huang v. J & A Entm't Inc.*, No. 09-CV-5587 (ARR) (VVP), 2012 WL 6863918, at *5 (E.D.N.Y. Dec. 3, 2012), the plaintiffs' claims concerned waiting or idle time "between tasks" after the employees' principal activities began and before they concluded each day. *See also Moon v. Kwon*, 248 F. Supp. 2d 201, 229 (S.D.N.Y. 2002) (relying on a case predating the Portal-to-Portal Act for the proposition that "waiting time [ ] spent primarily for the benefit of the employer" is compensable under the FLSA, which is not the test per *Busk*, 574 U.S. at 36 ("A test that turns on whether the activity is for the benefit of the employer is [ ] overbroad.")); *Donato v. Serv. Experts, LLC*, No. 1:17-CV-436 (DNH/CFH), 2018 WL 4660375, at *4-5 (N.D.N.Y. Sept. 28, 2018) (dismissing the FLSA claim and holding that the plaintiff was "waiting to be engaged" rather than "engaged to wait").

Second, as to the time Madicorp required Plaintiffs to spend driving themselves and co-workers to and from the worksite, the Court agrees with Madicorp that the FLSA does not require that this time be compensated. This driving time is not part of Plaintiffs' principal activities, largely for the same reasons articulated with respect to the pre-shift waiting time. *See, e.g.*, *Gorman*, 488 F.3d at 593; *Kim v. DK Cosmetics*, No. 19-CV-9079 (JMF), 2022 WL 540675, at *5 (S.D.N.Y. Feb. 23, 2022) ("The mere fact that Kim may have been encouraged (or even required) to pick up other employees from locations near his home in Queens and bring them with him to New Jersey, or to make occasional deliveries to retail stores in New York on his way home, certainly does not render his entire commute compensable."); *Williams v. Epic Sec. Corp.*, 358 F. Supp. 3d. 284, 299-300 & n.21 (S.D.N.Y. 2019) (held that security guards were not entitled to compensation for driving a company vehicle to worksites from their homes because "in circumstances where an employee is required to drive an employer's vehicle to work, and transports other employees during the trip, travel time is not compensable"); *cf. Singh v. City of New York*, 524 F.3d 361, 367 (2d Cir. 2008) ("while employees need not be compensated 'for or on account of' commuting to and from work, they must be compensated for any work performed during a commute that is 'integral and indispensable' to a principal activity of their employment") (quoting 29 U.S.C. § 254(a) and *IBP*, 546 U.S. at 37, respectively). Because the driving time alleged is preliminary or postliminary to Plaintiffs' principal activities, the FLSA does not require that such time be compensated.

Accordingly, the FLSA claim in the Amended Complaint is dismissed for failure to state a claim.

**B. The NYLL Claims**

As to the NYLL overtime claim alleged in the Amended Complaint, *see* Dkt. No. 19-2 at

¶¶ 90-98, this claim is co-extensive with the claim for unpaid overtime under the FLSA and as such is dismissed for failure to state a claim, as well. *See, e.g.*, *Duverny v. Hercules Med. P.C.*, No. 18CV07652 (DLC), 2020 WL 1033048, at *5 (S.D.N.Y. Mar. 3, 2020) (dismissing NYLL overtime claim as parallel to plaintiff's FLSA overtime claim, which the court dismissed).

In addition, Named Plaintiffs acknowledge that their NYLL underpayment claim is coextensive with their FLSA claim for unpaid overtime as the only underpayment or delayed payment alleged is the unpaid overtime. *See* Dkt. No. 19-2 at ¶ 108 (claimed time includes "time spent engaged to wait between the time that Plaintiffs were required to report to the worksite and the time that Plaintiffs were permitted to clock in for their shifts, as well as time spent driving the company vans to pick up and drop off co-workers and deliver them to and from the jobsite"). As the Court has already determined that the two proffered bases for the NYLL underpayment claim are insufficiently stated in the Amended Complaint, this independent claim for delayed or unpaid wages similarly fails.[6]

Finally, Plaintiffs' wage notice and pay statement claims similarly fail because of the Amended Complaint's failure to state an overtime claim under the FLSA or NYLL. As Named Plaintiffs acknowledge, the only alleged error in the wage notices and pay statements received was the inadequate or incorrect information regarding the allegedly uncompensated overtime for driving to and from worksites and waiting before the workday began. *See* Dkt. No. 19-4 at 13 ("Defendants [ ] failed to provide accurate pay statements . . . due to [their] failure to record all time worked") (citing Dkt. No. 19-2 at ¶¶ 82, 116). As these allegations failed to state a claim,

---

[6] In opposing the Motion as to this claim, as an alternative to relying on their alleged overtime claims, Plaintiffs argue that the Court should maintain this claim for Plaintiffs' "waiting time in weeks in which Plaintiffs worked less than 40 hours." Dkt. No 19-4 at 22. While the Court appreciates that a claim for "gap time" under the NYLL exists outside the bounds of FLSA compensation requirements, the Amended Complaint explicitly alleges that Plaintiffs were compensated for at least 40 hours per week. *See* Dkt. No. 19-2 at ¶¶ 61, 74-75.

Named Plaintiffs can point to no injury to substantiate the NYLL wage notice and pay statement claim. *See, e.g.*, *Campbell*, 2018 WL 5456666, at *7-8 (dismissing NYLL §§ 191 and 195 claims following dismissal of FLSA and NYLL overtime claims). Accordingly, the Court dismisses these claims for failure to state a claim, as well as for want of jurisdiction in light of the dismissed FLSA claim. *See, e.g.*, *Hudson v. St. Joseph's Hosp. Health Ctr.*, No. 5:21-cv-935 (GLS/TWD), 2023 WL 356165, at *4 (N.D.N.Y. Jan. 23, 2023).

### C. Leave to Amend

When a complaint has been dismissed, "[t]he court should freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2). However, a court may dismiss without leave to amend when amendment would be "futile," or would not survive a motion to dismiss. *Hutchison v. Deutsche Bank Sec. Inc.*, 647 F.3d 479, 491 (2d Cir. 2011). Here, amendment would be futile because Madicorp's decision to not compensate Plaintiffs for time spent (a) waiting for a half hour at the worksite before beginning their principal activities, and (b) driving themselves and others between their hotels and worksites as part of their daily commutes, could not state a claim for relief. *See, e.g.*, *Florence v. Seggos*, No. 21-834, 2022 WL 2046078, at *3 (2d Cir. June 7, 2022) (summary order) (affirming dismissal without leave to replead where "there [wa]s no indication that Plaintiffs could provide any additional allegations to salvage the otherwise deficient . . . claims"); *Brady v. Ostrager*, 834 F. App'x 616, 619 (2d Cir. 2020) (summary order) (finding that "the district court correctly held that amendment would be futile" where plaintiff's claims were barred by relevant law). As such, the Amended Complaint is dismissed with prejudice and without leave to amend, with the exception of FLSA claims based on laundry drives and corresponding NYLL claims.[7]

---

[7] The Court notes that at least with respect to Plaintiff Chase and similarly situated individuals,

V.     **CONCLUSION**

Accordingly, the Court hereby

**ORDERS** that Defendant Madicorp's motion to dismiss, Dkt. No. 6, is **GRANTED**; and the Court further

**ORDERS** that the Complaint, Dkt. No. 1, is **DISMISSED with prejudice and without leave to amend EXCEPT for Plaintiffs' claims for time spent driving to and from laundromats, and corresponding NYLL claims, which are dismissed without prejudice**; and the Court further

**ORDERS** that Plaintiff's cross-motion to amend, Dkt. No. 19, is **DENIED as moot**; and the Court further

**ORDERS** that the Clerk serve a copy of this Order on the parties in accordance with the Local Rules, and to close the case.

**IT IS SO ORDERED.**

Dated: February 28, 2024
        Albany, New York

Anne M. Nardacci
U.S. District Judge

---

Plaintiffs may be able to state a claim for the time spent driving co-workers to and from offsite laundromats. In light of the sparse allegations concerning this conduct in the Amended Complaint, *see* Dkt. No. 19-2 at ¶ 72 ("Named Plaintiff Chase was also expected to drive his co-workers to the laundromat and back once or twice per week, which took approximately 45 minutes roundtrip. Named Plaintiff Chase was not compensated for this drive time."), claims addressing this conduct are dismissed without prejudice. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (conclusory allegations not credited in the face of a motion to dismiss); *see, e.g.*, *Hudson*, 2023 WL 356165, at *3 (dismissing FLSA and NYLL claims where "allegations invite speculation and do not nudge [plaintiff's] claims from conceivable to plausible").